# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP DIVISION

|  |  |  |
|---|---|---|
| **TONYA K. HAUPT,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:10CV00045 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By:  James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Roger W. Rutherford, Wolfe, Williams, Rutherford, & Reynolds, Norton, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Jared Littman, Assistant Regional Counsel, Charles Kawas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

Plaintiff Tonya K. Haupt filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying her claims for supplemental security income ("SSI") benefits pursuant to Title XVI of the Social Security Act ("Act"), 42 U.S.C.A. § 1381-1383d (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 1383(c)(3).

Haupt filed for benefits on June 21, 2007. Her claim was denied initially and upon reconsideration. Haupt received a hearing before an administrative law judge ("ALJ"), during which Haupt, represented by counsel, a medical expert, and a vocational expert testified. The ALJ denied Haupt's claim, and the Social Security Administration Appeals Council denied her Request for Reconsideration. Haupt then filed her Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed the issues. The case is ripe for decision.


II

Haupt was 42 years old when she applied for benefits, making her a younger person under the regulations. 20 C.F.R. § 404.1563(c) (2010). Haupt has a high school diploma and an associate degree in applied science. Haupt received SSI benefits from October 1999 until 2006, at which time her then-husband took a job that caused her benefits to be terminated due to their excess household income. When her benefits terminated, Haupt began work as a patient observer at a mental hospital. She worked in that position for one and a half years. Haupt reapplied for benefits when she and her husband divorced.

Haupt received treatment at Blue Ridge Behavioral Healthcare from January 2000 through July 2001 for panic attacks, avoidance behaviors, fear of leaving the house, paranoia, anxiety, thoughts of death, memory lapses, and phobias. She has received treatment at Carilion Family Medicine intermittently since July 2001 for leg cramps, depressive disorder, anxiety disorder, morbid obesity, elevated blood pressure, and other symptoms and impairments. She has had gastric bypass surgery and abdominoplasty.

Haupt was also treated in 2005 and 2006 at the Lewis-Gale Clinic for impairments including anemia, heavy menses, severe chronic anxiety, difficulty sleeping, depressive symptoms, psoriasis, and back and leg pain. Her doctors observed, however, that she did not seem anxious, was not in acute distress, had the appropriate affect, had no problem relating factual information, and was alert, oriented, and relaxed. There is evidence that Haupt was treated by an unidentified source in early 2006 for depression and anxiety and was prescribed Cymbalta and Ativan.

In March 2006, Haupt was evaluated by Lin Shaner, a Licensed Professional Counselor. Shaner found that Haupt had a propensity toward anxiety attacks and scored high on a compulsive personality scale. She had weakness in her ability to focus and concentrate on numerical information and to perform tasks requiring rapid eye-hand coordination. However, Haupt told Shaner that she was feeling

more confident and less distressed due to weight loss and medication. She indicated that she enjoyed working with people and has good organizational and computer skills. She exhibited no aggressiveness, major depression, or mood instability. Shaner diagnosed bipolar II disorder based on Haupt's medical history. He opined that she could not do jobs requiring continual standing, walking, climbing, stooping, bending, or lifting and could have difficulty tolerating initial learning stages. He opined that she would function best in a job where she has contact with others.

In June 2006, Haupt began seeing Nicholas Zeltvay, D.O., for a reported history of bipolar disorder, obsessive compulsive disorder, panic disorder with agoraphobia, and recurrent major depression. He assessed her with a Global Assessment of Functioning (GAF) score of 65.[1] Over the course of several months, Dr. Zeltvay noted depression, irritable mood, difficulty with word confusion, neglected appearance, addictive spending, sleep disturbance, panic attacks, and other symptoms, but concluded that Haupt had no severe depression, had no homicidal or suicidal ideation, had no psychotic process, and was

---

[1]The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 61 and 70 indicate some mild symptoms or some difficulty in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

cognitively intact. In September 2006, he attributed her depression to a lack of productive activity. (R. 340.) Throughout treatment, Haupt received prescription medication from Dr. Zeltvay to address her symptoms. She has stated that her medications were effective in controlling her bipolar disorder.

From 2006 to 2007, Haupt saw William Kent Harris, M.D., for a variety of conditions, including arthritis pain, morbid obesity, anemia, anxiety disorder, and bipolar disorder. In October 2007 and April 2008, state agency psychologists opined that Haupt's mental impairments were not severe.

In February 2008, Haupt received treatment after her daughter reported that Haupt was a risk to herself. She was diagnosed with bipolar disorder, panic disorder, and obsessive compulsive disorder. She reported that she did not have homicidal ideation or a history of violent behaviors. She denied suicidal intentions, but said that she would be okay if she did not wake up. There was evidence that she had cut herself in the past and had attempted to overdose on pills several weeks earlier but had thrown them up. She reported stress caused by her husband's affair. She was assigned at GAF score of 62, and it was determined that the criteria for a temporary detention order was not met.

In May 2008, Dr. Harris indicated that Haupt had no depression, suicidal ideas, hallucinations, or memory loss. In December 2008, Dr. Harris opined that Haupt was permanently unable to work. In July 2009, Dr. Harris found Haupt to

be alert and oriented with no mood, thought, or memory difficulties and no suicidal or homicidal ideations. Haupt is not currently receiving mental health treatment.

At the administrative hearing, a medical expert testified. He had reviewed Haupt's medical record and opined that her physical impairments required the imposition of some work limitations. He opined that she was limited to light work with other specific limitations.

After reviewing Haupt's records and the evidence at the hearing, the ALJ determined that she had severe impairments of osteoarthritis, hypertension, degenerative joint disease, and obesity, but that none of these conditions, either alone or in combination, met or medically equaled a listed impairment. Taking into account Haupt's limitations, the ALJ determined that Haupt retained the residual functional capacity to perform light work that requires her to lift or carry 20 pounds occasionally and 10 pounds frequently, stand for six hours out of eight, walk for four hours out of eight in 30 minute intervals, and sit for six hours out of eight. Haupt cannot perform jobs that require more than occasional balancing, kneeling, crouching, crawling, stooping, bending, or climbing ramps or stairs or require any climbing of ladders, ropes, or scaffolds or that expose her to hazards such as unprotected heights and dangerous moving machinery.

Haupt argues the ALJ's decision is not supported by substantial evidence. For the reasons below, I disagree.

## III

The plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. The plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing SSI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. § 416.920(a)(4) (2011). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the

physical and mental demands of the claimant's past relevant work and of other work present in the national economy.  *Id.* at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is the role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence.  *Seacrist v. Weinbarger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976).  It is not the role of this court to substitute its judgment for that of the Commissioner.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Haupt argues that the ALJ's decision was not supported by substantial evidence.

Haupt first argues that the ALJ improperly discounted the opinion of Dr. Harris and that the opinion of Dr. Harris is entitled to controlling weight.  A treating physician's medical opinion will be given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2) (2010). However, the ALJ has "the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

In the present case, the ALJ afforded little weight to the opinion of Dr. Harris. The ALJ did not err in discounting the opinion of Dr. Harris because the opinion was unsupported by the record. *See* 20 C.F.R. § 416.927(d)(3) (2011). Particularly, Dr. Harris imposed severe limitations on Haupt, including a limitation that she not lift more than five pounds and a limitation that she not sit or stand more than one hour at a time. The severe limitations are not supported by treatment notes or examination results in Haupt's medical record. State agency medical consultants also had opinions that conflicted with Dr. Harris; they opined that Haupt could perform a range of medium work. More importantly, the medical expert who testified at the hearing and who was able to review the entire medical record opined that Haupt could perfrom a range of light work. Furthermore, the limitations imposed by Dr. Harris are inconsistent with Haupt's reported activities and the benefit she has reported from medication.

With regard to Haupt's mental impairments, Dr. Harris' notes indicate that Haupt was alert and oriented and had no suicidal or homicidal ideations. Dr. Zeltvay's treatment notes undermine Haupt's claim that she is disabled due to her

-9-

mental impairments; for example, he assigned a GAF score that indicated mild symptoms.

Additionally, the ALJ properly rejected Dr. Harris' conclusion that Haupt was unable to work as an issue properly reserved for determination by the Commissioner. 20 C.F.R. § 416.927(e)(1) (2010).

Second, Haupt argues that the ALJ erred in failing to find that Haupt suffers from a severe mental impairment. The ALJ considered the four functional areas set out in the regulations for evaluating mental disorders: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. He found no more than moderate limitations in her daily activities; she cares for herself and her home, does shopping, drives, pays bills, reads, and gets along with her family, friends, and neighbors. He found no more than moderate limitations in her social functioning, based on her reported activities and her previous job as a patient observation assistant. She also interacted well at the hearing. The ALJ found no more than moderate limitations in Haupt's concentration, persistence, or pace, based on her reported activities and the scores she received in intelligence testing. The ALJ found that Haupt had no episodes of decompensation that resulted in significant, sustained loss of adaptive functioning.

Furthermore, the GAF scores reported in Haupt's medical records support a finding of only mild effects of Haupt's mental impairments. She reported that

medication controls her symptoms. In July 2007, Haupt declined a referral to a counselor, and in October 2007, treatment notes indicate that her bipolar disorder was stable. Her course of treatment has been conservative. Haupt has participated in activities that indicate that her mental impairments do not significantly limit her ability to work; she has gone camping, performed household chores, and took classes in an effort to earn a psychology degree. The ALJ properly considered the opinion of state agency psychologists, who concluded that Haupt did not suffer from a severe mental impairment. The ALJ also properly weighed the evidence added to the medical record since the psychologists performed their reviews.

The ALJ properly considered Haupt's mental impairments, and his decision that the impairments were not severe was supported by appropriate evidence. Similarly, the ALJ did not err by failing to include additional limitations accounting for Haupt's mental impairments.

IV

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:   September 19, 2011

/s/  James P. Jones
United States District Judge